LAW OFFICES
# WILLIAMS & CONNOLLY LLP
725 TWELFTH STREET, N.W.

DAVID M. ZINN
(202) 434-5880
dzinn@wc.com

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

September 3, 2019

<u>Via ECF and Federal Express</u>

The Honorable William H. Pauley III
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 1920
New York, NY 10007

    Re:    *SEC v. Jason Sugarman*, No. 19 Civ. 05998 (WHP)
           <u>Defendant's Request for Pre-Motion Conference (Motion to Dismiss)</u>

Dear Judge Pauley:

    This firm represents Defendant Jason Sugarman. We write to request a pre-motion conference to discuss our anticipated motion to dismiss the complaint filed by the Securities and Exchange Commission (the "Commission").

    The complaint charges that Mr. Sugarman participated in a complex scheme, orchestrated by Jason Galanis, to defraud investors by issuing sham Native American tribal bonds and diverting the proceeds. The Commission alleges both primary and aiding-and-abetting claims under Sections 17(a)(1) and 17(a)(3) of the Securities Act of 1933 and Section 10(b) of the Exchange Act of 1934. The complaint, however, does not allege with the required particularity that Mr. Sugarman committed any of those violations. It should, therefore, be dismissed.

    This matter has a long procedural history. In 2016, the Commission brought an enforcement action in this Court against eight individuals for their role in the fraud. *SEC v. Archer et al.*, No. 16-cv-03505 (S.D.N.Y.). The Commission did not sue Mr. Sugarman. Simultaneously, the government brought criminal charges against seven of the same defendants (but again, not Mr. Sugarman). *United States v. Galanis et al.*, No. 16-cr-00371 (S.D.N.Y.). Four pleaded guilty, and three were convicted at trial. Subsequently, Judge Abrams vacated the conviction of one of the defendants, Devon Archer, because she "harbor[ed] substantial concern" that he was "deceived by Jason Galanis" and "thus innocent." *United States v. Galanis*, 366 F. Supp. 3d 477, 480–81 (S.D.N.Y. 2018). Judge Abrams noted that Archer (like Mr. Sugarman) was working with Galanis on a business plan to develop a global financial services firm, "which involved many of the same entities and actors" as the tribal bond scheme. *Id.* at 492–93. She concluded, however, that "Archer had good reason to believe the [tribal] bond deal was legitimate," *id.* at 500, and the fact "that certain communications may indicate a hope or belief that the defendants would benefit from [it] by virtue of it helping to advance the [business] does not mean that such benefit was mutually

WILLIAMS & CONNOLLY LLP

Hon. William H. Pauley III
September 3, 2019
Page 2

understood to result from *stealing* the bond money," *id.* at 496 (emphasis in original). The government appealed the decision, and the matter is pending before the Second Circuit.

The Commission's complaint against Mr. Sugarman suffers from similar defects. The complaint—like the government at Archer's trial—cannot link Mr. Sugarman to Galanis's fraud, as opposed to the legitimate business activities of an integrated financial services firm. The complaint alleges that Mr. Sugarman was an officer, director, and part-owner of the firm's holding company, managing assets in the billions of dollars. Compl. ¶¶ 14, 17, 37, 54. Despite over four years of investigation and millions of documents collected, however, the Commission does not connect Mr. Sugarman to Galanis's scheme with the particularity demanded by Federal Rule of Civil Procedure 9(b). *See SEC v. Wey*, 246 F. Supp. 3d 894, 911 (S.D.N.Y. 2017); *see also* Pre-motion Letter at 2, *SEC v. Archer et al.*, No. 16-cv-03505 (S.D.N.Y. Mar. 27, 2018), ECF No. 140 (noting the Commission had produced more than 3.2 million documents).

*First*, the complaint relies on improper pleading techniques—rather than particularized facts—in attempting to tie Mr. Sugarman to the bond scheme. Under Rule 9(b), when a complaint alleges fraudulent conduct by multiple individuals, it "must give notice to *each* defendant of its alleged misconduct." *In re Blech Sec. Litig.*, 961 F. Supp. 569, 580 (S.D.N.Y. 1997) (emphasis in original); *accord SEC v. Lee*, 720 F. Supp. 2d 305, 338 (S.D.N.Y. 2010). But here, the complaint refers to actions taken by "Sugarman and Galanis" (or vice versa) *over sixty times* in thirty-seven pages, without distinguishing what specifically Mr. Sugarman allegedly did. *See* Compl. ¶¶ 1, 5, 6, 7, 8, 9, 10, 17, 19, 21, 22, 23, 24, 25, 30, 32, 34, 36, 37, 40, 41, 42, 48, 49, 50, 52, 53, 54, 58, 60, 61, 66, 68, 71, 72, 73, 75, 76, 77, 80, 82, 83, 86, 90, 91, 92, 95, 100, 102. Because "direct participation constitutes a critical element" of the claims, the complaint's allegations must directly link *Mr. Sugarman*—not Galanis—to the fraudulent scheme. *Blech*, 961 F. Supp. at 581. The Commission's "Sugarman and Galanis" allegations do not do so.

*Second*, the complaint does not plead with particularity that Mr. Sugarman committed a "manipulative or deceptive act," an essential element of scheme-liability claims. *Wey*, 246 F. Supp. 3d at 915–16. Stripped of the improper allegations described above, the complaint fails to allege facts connecting Mr. Sugarman to the fraudulent components of the scheme. For example, there is no allegation that Mr. Sugarman had any contact with (much less made misrepresentations to) the victims in this scheme—the Native American tribal corporation and the pension fund investors who were placed in the bonds. Compl. ¶ 2. The complaint alleges that Mr. Sugarman knew the pension fund investors would purchase the bonds and that some of the proceeds would be invested in the financial services business, but it alleges no facts that show he knew the pension funds were not willing investors in that business, through an annuity or otherwise. *Id.* ¶¶ 34-35, 42, 47; *see id.* ¶ 46 (no allegation, other than conclusory statement that he knew "from Galanis," that the proceeds were supposed to be invested in an annuity, or that Mr. Sugarman attended the meeting where the bond transaction was approved). The complaint also fails to allege that Mr. Sugarman had a role in creating or managing WAPCC, the fake annuity provider used by Galanis and Hugh Dunkerley to divert bond proceeds, or that he knew of a fake annuity provider. *Id.* ¶¶ 48-49. It also does not allege he played any role in "recycling" bond proceeds. *Id.* ¶¶ 50-52.

WILLIAMS & CONNOLLY LLP

Hon. William H. Pauley III
September 3, 2019
Page 3

In fact, the complaint contains remarkably few allegations of statements or actions by Mr. Sugarman. Of those, the Commission spends five pages describing a prior transaction involving Galanis and Mr. Sugarman that it concedes bears no relationship to the tribal bond scheme. *Id.* ¶¶ 21-31. It also uses two pages to describe how *Galanis* used tribal bond proceeds to profit through an unrelated IPO in which Mr. Sugarman and his family also owned shares. *Id.* ¶¶ 100-09.

The remaining acts attributed to Mr. Sugarman relate primarily to financing the purchase of Hughes and AAM, the investment advisers acquired by the financial services firm whose pension fund investors were placed in the bonds, *id.* ¶¶ 36-45, 54-64, as well as the use of tribal bonds as regulatory capital in other affiliated companies, *id.* ¶¶ 84-86, 90-91. The complaint also alleges that he invested his own funds in the businesses, *id.* ¶ 96, and also received some payments, *id.* ¶ 70. But these allegations describe "financings and investments" that "were not shams." *In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 472, 505 (S.D.N.Y. 2005); *see also Galanis*, 366 F. Supp. 3d at 498 ("There was nothing inherently illegal or illegitimate about [the acquisitions of Hughes and AAM], even though they were motivated by a desire to locate purchasers of the WLCC bonds."). What is missing from the allegations are facts showing "awareness or notice that [the bonds] [were] a scam." *SEC v. Cohmad Sec. Corp.*, Civ. No. 09-5680, 2010 WL 363844, at *1 (S.D.N.Y. Feb. 2, 2010). Without sufficient factual allegations to show that Mr. Sugarman knew that the tribe and the investors had been lied to, there is nothing improper about these transactions.

*Third*, the complaint does not plead facts that, if true, show that Mr. Sugarman knowingly or recklessly provided substantial assistance to Galanis's fraudulent scheme, as required to plead aiding-and-abetting liability. *SEC v. Apuzzo*, 689 F.3d 204, 211 & n.6 (2d Cir. 2012). As with the primary liability claims, the Commission relies almost entirely on the role that Mr. Sugarman played in financing the acquisitions of the business. Compl. ¶¶ 7, 36-45, 54-64. But as explained above, "one who conducts normal business activities while ignorant that those activities are furthering a fraud is not liable for securities fraud." *Cohmad*, 2010 WL 363844, at *1.

This is an "indisputably complex case." *Galanis*, 366 F. Supp. 3d at 492. That, however, does not relieve the Commission of its pleading obligations under Rule 9(b). After four years of discovery, the Commission still cannot say with any meaningful degree of particularity what Mr. Sugarman—not Galanis, or "Sugarman and Galanis"—did wrong. The complaint, therefore, does not state a claim against Mr. Sugarman and should be dismissed.

For the foregoing reasons, Mr. Sugarman respectfully requests leave to file a motion to dismiss. The parties have already jointly agreed a briefing schedule that is set out in the Joint Rule 26(f) Report and Case Management Plan (ECF No. 20).

Respectfully submitted,

*David Zinn* (by AM)

David M. Zinn

cc:     Counsel of record (via ECF)